A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS & CULVER
1648 Poly Drive, Suite 206
Billings, Montana 59102
Telephone: (406) 256-8155
Facsimile: (406) 256-8159
triel@edwardslawfirm.org
chris@edwardslawfirm.org
john.edwards@edwardslawfirm.org

Jeffrey Kaliel, *pro hac vice* forthcoming
Sophia Gold, *pro hac vice* forthcoming
KALIELGOLD PLLC
1100 15h St. NW
4th Floor
Washington, DC 20005
(202) 300-4783
jkaliel@kalielpllc.com
sgold@kalielgoldpllc.com

*Attorneys for Plaintiff*



CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2021 DEC -2 A 8: 19

FILED
BY_____
DEPUTY

## MONTANA THIRTEEN JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY, MONTANA

| | |
|---|---|
| BRANDY MORRIS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART INC., previously known as Wal-Mart Stores, Inc.,<br><br>Defendant. | Cause No. **DV21-01460**<br>Judge: Colette B. Davies<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

## **CLASS ACTION COMPLAINT**

Plaintiff Brandy Morris, on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## **INTRODUCTION**

1. Plaintiff brings this action on behalf of herself and classes of all similarly situated consumers against Defendant Walmart, Inc., previously known as Wal-Mart Stores, Inc. ("Walmart" or "Wal-Mart") arising from its deceptive, unfair and undisclosed practices of repeatedly reprocessing checks returned for insufficient funds—leading to repeated and punishing insufficient funds fees from customer's banking institutions. Worse, Wal-Mart repeatedly and without authorization attempts to debit its own $25 returned item fee repeatedly from its customers' accounts. Wal-Mart's actions ensure that a single bounced check often results in bank fees assessed to its customers of $180 or more. But Wal-Mart never once discloses this practice to its customers.

2. Consumers who write checks in-store never authorize Walmart to reach into their accounts and—without authorization or any opportunity to dispute or challenge the act—take two or three return fees for a single bounced check.

3. Plaintiff brings this action as a class action, on behalf of a class consisting of all persons and entities from whose bank accounts Wal-Mart has taken or tried to take purported "fees" for re-submitting to their bank account a check that had been returned due to insufficient funds, without their authorization or consent (the "Class" or "Members of the Class").

4. These practices breach contractual promises; violate the covenant of good faith and fair dealing; and/or result in the Bank being unjustly enriched.

2

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff resides in Billings, Montana and was a Walmart customer.

6. Defendant Wal-Mart is an American multination retail corporation with its principal place of business in Bentonville, Arkansas, that operates a chain of hypermarkets, discount department stores, and grocery stores. As of September 30, 2016, Walmart has 11,573 stores and clubs in 28 countries including several stores in the State of Montana.

7. This court has jurisdiction over Defendant Wal-Mart pursuant to Rule 4, M.R.Civ.P., because Wal-Mart is subject to personal jurisdiction here, regularly conducts business here, and a substantial part of the conduct giving rise to the claims asserted herein occurred in Montana.

8. Venue is proper in Yellowstone County under MCA § 25-2-118 because Plaintiff resides in Yellowstone County.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Overview of Claim

9. Plaintiff brings this cause of action challenging Wal-Mart's practices of a) repeatedly charging numerous returned check fees for the same check; and b) reprocessing both paper checks and returned check fees as separate items. These practices result in huge amounts of excessive and punitive bank fees assessed to Wal-Mart customers.

10. Here's how it happens. As an example, on January 2, 2018, Plaintiff wrote a check for $139.71 at a Wal-Mart store in Montana.

11. That check was returned unpaid by Plaintiff's bank. Plaintiff's bank assessed a $30 "NSF Fee" as a result.

12. Then, six days later on January 8, 2018, without any warning or notice to Plaintiff, Wal-Mart attempted to process the same check again. This same check was returned again unpaid by Plaintiff's bank, and Plaintiff's bank again charged *another* $30 NSF Fee for it.

13. Then, seemingly out of nowhere and again without notice to Plaintiff, on January 19, 2018, Wal Mart attempted to withdraw a $25 "Return Fee" from Plaintiff's account. Plaintiff's account did not have enough funds in it to cover that $25 Return Fee, so the attempt was returned unpaid and Plaintiff's bank charged her *another* $30 NSF Fee as a result.

14. So far, Plaintiff had been assessed $90 in bank fees as a result of her returned check.

15. But it did not stop there. Wal-Mart again attempted to deduct another $25 Return Fee from Plaintiff's account on January 26, 2018—almost a full month after Plaintiff originally wrote her check. Again, Plaintiff's account did not have enough funds in it to cover that $25 Return Fee, so the attempt was returned unpaid and Plaintiff's bank charged her *another* $30 NSF Fee as a result.

16. Then yet again, on February 2, 2018, Wal-Mart again attempted to deduct another $25 Return Fee from Plaintiff's account. Again, Plaintiff's account did not have enough funds in it to cover that $25 Return Fee, so the attempt was returned unpaid and Plaintiff's bank charged her *another* $30 NSF Fee as a result.

17. In all, Wal-Mart made *five different debits* on Plaintiff's account for a single returned check. As a result, Plaintiff was assessed $150 in NSF Fees by her bank as a result of Wal-Mart's reprocessing practices—more than the original check amount.

**B. <u>Because Wal-Mart's Point of Sale Notice Does Not Accurately State its Policy of Collecting Multiple Return Fees for the Same Check, Wal-Mart Breached its Contract with Customers When it Assessed More than One Return Fee on the Same Check</u>**

18. The federal Electronic Funds Transfer Act, Regulation E, provides, in relevant part, as follows:

**§ 205.3 Coverage:**

(3) Collection of returned item fees via electronic fund transfer.

> (i) General. The person initiating an electronic fund transfer to collect a fee for the return of an electronic fund transfer or a check that is unpaid, including due to insufficient or uncollected funds in the consumer's account, **must obtain the consumer's authorization for each transfer.** A consumer authorizes a one-time electronic fund transfer from his or her account to pay the fee for the returned item or transfer if the person collecting the fee provides notice to the consumer stating that the person may electronically collect the fee, and the consumer goes forward with the underlying transaction. **The notice must state that the fee will be collected by means of an electronic fund transfer from the consumer's account if the payment is returned unpaid and must disclose the dollar amount of the fee.** If the fee may vary due to the amount of the transaction or due to other factors, then, except as otherwise provided in paragraph (b)(3)(ii) of this section, the person collecting the fee may disclose, in place of the dollar amount fee, an explanation of how the fee will be determined.

(emphasis added).

19. Accordingly, Wal-Mart was required to notify its customers of its fee and reprocessing practices.

20. Upon information and belief, Wal Mart failed to do so because it affixed the following notice to checkout aisles at its stores in Montana:

5

# Check Policy:

**Please show one of the following IDs:**
- Driver's license
- Non-driver's state ID card
- Military ID
- Social Security Card and a picture ID

**Sorry we cannot accept:**
- Third-party checks
- Checks made out to "cash"
- Post-date checks
- Multiple-payee checks
- Handwritten payroll checks

**You may write a check for up to $20 over the amount of your purchase upon ID verification.**

When you provide a check as payment, you authorize us to use information from your check to process a one-time Electronic Funds Transfer (EFT) or a draft drawn from your account, or to process the payment as a check transaction. When we use information from your check to make an EFT, funds may be withdrawn from your account as soon as the same day you make your payment, and your financial institution will not return your check.

**If your check's returned unpaid, you also authorize us to collect your payment and a return fee of**

**$25.00**

**by an EFT(s) or draft(s) drawn from your account.**

## We guarantee the low price and the right price.

If an item scans at a price higher than the shelf or advertised price, we'll correct the error. You'll get the lowest advertised price for that item and all additional identical items.

We gladly accept:

21. The notice expressly states that Wal-Mart is only authorized to process a "one-time" payment when a customer writes a paper check and to collect a single "return fee of $25.00" if "your check's returned unpaid."

22. Wal-Mart violated this promise when it attempted to collect three different "return fees" and made five payment attempts from Plaintiff's account, not the "one-time" payment it pledged to process. As a result, Plaintiff incurred new NSF Fees from her bank for the four additional debits Wal Mart made to her account over and above the single debit it promised.

23. Wal-Mart did not comply with Regulation E's dictates because it did not accurately state its fee and reprocessing policies, and because it did not obtain valid authorization from Plaintiff to make *five separate debits* on her account.

### C. **Wal Mart Promised to Assess a Return Fee with a Check Amount, not to Make Two Separate Debits**

24. Moreover, Wal-Mart promised to collect a "payment and a return fee of $25," not to make two separate check collection attempts plus three more separate return fee collection attempts. By splitting its return fee from the underlying payment amount, Wal Mart misrepresented its true practice and sidestepped Regulation E.

25. This practice resulted in many more debits to Plaintiff's checking account, causing many more NSF Fees than warranted.

26. Wal-Mart provides no disclosure of its true practices, and in so doing, deceives its check-writing customers.

### D. **Wal-Mart Breached the Duty of Good Faith and Fair Dealing.**

27. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the

7

other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Wal-Mart is prohibited from exercising its discretion to enrich herself and gouge its customers. Indeed, Wal-Mart has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the notice stickers Wal-Mart foisted on Plaintiff and its other customers—Wal-Mart unilaterally provided itself numerous discretionary powers. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Wal-Mart abuses that discretion by repeatedly debiting customers' accounts even when only a single check is written, contrary to customers' reasonable expectations.

28. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by repeatedly re-debiting their accounts, Wal-Mart breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

29. It was bad faith and totally outside Plaintiff's reasonable expectations for Wal-Mart to use its discretion to make five separate debits on her account for a single check.

### E. Wal-Mart Concealed Its Wrongdoing

30. Because Wal-Mart did not disclose its re-debiting practice, Plaintiff and the Class did not and could not reasonably have discovered Wal-Mart's conduct until recently.

31. The nature of Wal-Mart's conduct is such that Plaintiff, and each member of the Class would be unaware that Wal-Mart was engaging in wrongdoing by re-debiting class members' accounts. Wal-Mart did not provide any direct notice to Plaintiff or class members of their re-debiting practice. And as a regular shopper at Wal-Mart, Plaintiff was unaware, when she

8

saw multiple charges from Wal-Mart on her bank statement over the course of several weeks, that Wal-Mart was re-debiting her account for the same purchase as opposed to for new purchases. Additionally, given that bank statements provide only minimal information about each transaction which resulted in a fee, Plaintiff and class members lacked the knowledge, experience, and training to reasonably ascertain Wal-Mart's re-debiting practices.

32. Wal-Mart was aware of its non-disclosure because of its superior knowledge of its own conduct. Concealment of its conduct and failure to disclose its conduct to Plaintiff and the Class constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff and the Class.

33. Plaintiff did not learn of Defendant's conduct supporting Plaintiff's claims until approximately Summer 2021, after consulting with counsel. Plaintiff was not at fault for failing to discover Wal-Mart's conduct and had no actual or presumptive knowledge of her claims.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Rule 23, Montana Rules of Civil Procedure. The Classes include:

All Montana citizens who, within the applicable statute of limitations period, were charged multiple fees from their banks as a result of Wal-Mart's repeat debit policy (the "Montana Class").

All persons who, within the applicable statute of limitations period, were charged multiple fees from their banks as a result of Wal-Mart's repeat debit policy (the "National Class").

35. Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any

such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

36. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether certification is appropriate.

37. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual Class members because Wal-Mart has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a) Whether Wal-Mart improperly debited customers' accounts;

b) Whether any of the conduct enumerated above violates the contract;

c) Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing; and

d) Whether any of the conduct enumerated above constitutes unjust enrichment; and

e) The appropriate measure of damages.

38. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to Wal-Mart's records. Wal-Mart has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

39. It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their

common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

40. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Wal-Mart, as described herein.

41. Plaintiff is more than an adequate representative of the Classes in that Plaintiff has tendered payments to Wal-Mart and has suffered damages as a result of Wal-Mart's contract violations, Wal-Mart's violations of the covenant of good faith and fair dealing, and Wal-Mart's unjust enrichment. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

42. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

43. Wal-Mart has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

44. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

45. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

46. Plaintiff and Wal-Mart contracted for the sale and purchase of goods, as embodied in Wal-Mart's checkout counter notice sticker.

47. Defendant mischaracterized in the notice sticker its true return fee and reprocessing practices and breached the express terms.

48. No contract provision authorizes Defendant to charge more than one return fee for the same check, to undertake multiple debits on an account for the same check.

49. Defendant has breached its contracts with Plaintiff and the Classes through its policies and practices as alleged herein.

50. Plaintiff and members of the putative Classes have performed all of the obligations on them.

51. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

### COUNT II
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Classes)

52. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

53. Plaintiff and Defendant Wal-Mart contracted for the purchase and sale of goods as set forth in Wal-Mart's checkout counter notice sticker.

54. The checkout counter notice sticker is a contract of adhesion.

55. By virtue of the checkout counter notice sticker governing the fees on the purchase and sale transaction, a special relationship existed between Plaintiff/Class and Wal-Mart because: (1) the parties were in inherently unequal bargaining positions with Wal-Mart occupying the superior and dominant bargaining position, (2) the motivation for Plaintiff/Class entering into the contract was a consumer motivation, i.e., to purchase a consumer good, (3) ordinary contract damages are not adequate because they do not require Wal-Mart to account for its actions and they do not make Plaintiff and the Class whole since Plaintiff was exposed to ongoing emotional distress during the time she incurred unauthorized fees, (4) Plaintiff and the Class are especially vulnerable because they have, by necessity, placed trust in Wal-Mart to fairly follow its transactional fee policies and, (5) at all times, Wal-Mart knew Plaintiff and the Class were unsophisticated and in a vulnerable position because Wal-Mart was the author of the checkout counter notice sticker and controlled the payment processing and imposition of fees.

56. Implied in the parties' contract under Montana law is a covenant of good faith and fair dealing including an obligation of honesty in fact. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

57. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit

of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

58. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes its conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

59. Wal-Mart breached the covenant of good faith and fair dealing through its payment policies and practices imposing additional fees on Plaintiff and the Classes as explained herein.

60. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

61. Defendant's conduct constitutes fraud and/or malice as defined by Montana law for purposes of the imposition of punitive damages to punish Defendant for such conduct and deter Defendant from repeating the same.

62. Plaintiff and members of the putative Classes have performed all of the obligations imposed on them.

63. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## COUNT III
## UNJUST ENRICHMENT
### (In the Alternative to COUNT I and COUNT II)
### (On Behalf of Plaintiff and the Classes)

64. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

14

65. This Count is brought solely in the alternative to Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims. Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

66. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

67. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for.

68. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

69. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

70. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes pursuant to Montana Rule of Civil Procedure 23, appointing the Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the Classes;

B. Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C. Enjoining Defendant from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H. Awarding exemplary or punitive damages because the conduct of Wal-Mart constitutes fraud and/or malice under MCA § 27-1-221;

I. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J. Awarding such other relief as this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

DATED this 2nd day of December, 2021.

EDWARDS & CULVER

By: _____
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
*Attorneys for Plaintiffs*