IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BRANDY MORRIS, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART, INC., previously known as Wal-Mart Stores, Inc.,<br><br>Defendant. | CV 22-16-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Brandy Morris ("Morris"), brings this putative class action against Defendant Walmart, Inc. ("Walmart"), arising from Walmart's returned check fee processing practices. (Doc. 3.) Presently before the Court is Walmart's Motion to Dismiss. (Doc. 14.) The motion has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and is fully briefed and ripe for review. (Docs. 23, 27.) For the following reasons, the Court recommends that Walmart's motion be **GRANTED in part and DENIED in part**.

I.   BACKGROUND

Morris alleges that Walmart's return check practices breached its Check Policy that is posted at checkout aisles in its Montana stores. The Check Policy provides:

1

> When you provide a check as payment, you authorize us to use information from your check to process a one-time Electronic Funds Transfer (EFT) or a draft drawn from your account, or to process the payment as a check transaction. When we use information from your check to make an EFT, funds may be withdrawn from your account as soon as the same day you make your payment, and your financial institution will not return your check.
>
> If your check's returned unpaid, you also authorize us to collect a return payment and a return fee of
> $25.00
> by an EFT(s) or drafts(s) drawn from your account.

(Doc. 3 at 6.)

Morris alleges in her Complaint that she wrote a check for $139.71 at a Walmart store in Montana on January 2, 2018. The check was returned unpaid by Morris's bank, and her bank assessed a $30 NSF Fee.

Six days later, on January 8, 2018, Walmart attempted to process the check again. The check was again returned unpaid by Morris's bank, and Morris was charged another $30 NSF Fee by the bank.

After the second returned check, Walmart attempted to withdraw a $25 Return Fee from Morris's bank account on January 19, 2018. Morris's account did not have sufficient funds to cover the Return Fee, so the attempt was returned unpaid, and Morris's bank charged her another $30 NSF Fee.

Walmart again attempted to deduct a $25 Return Fee from Morris's account on January 26 and February 2, 2018. The attempts were again returned unpaid, and Morris's bank charged her two additional $30 NSF Fees.

2

In total, Walmart attempted five separate withdrawals from Morris's account – two for the amount of the check, and three for the collection of Walmart's return fee. As a result of Walmart's reprocessing practices, Morris was assessed $150 in NSF Fees by her bank.

Morris now brings this action challenging Walmart's practices of 1) repeatedly attempting debits of its own returned check fees for the same check; and 2) reprocessing returned checks and returned check fees as separate items, thereby subjecting its customer to multiple NSF fees.

In her Complaint, Morris asserts claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and unjust enrichment (Count III). Morris also seeks to represent two classes of Walmart customers who were assessed bank fees by third parties as a result of Walmart's returned check processing practices.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.* 135 F.3d 658, 661 (9th Cir. 1998).

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). But the Court also may consider documents attached to the pleadings and may consider documents incorporated into the pleadings by reference. *Ritchie*, 342

F.3d at 908.  Documents may be incorporated by reference into the pleadings where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.  Here, the Check Policy is incorporated into the Complaint and central to Morris's claims.

### III.   DISCUSSION

#### A.   Count I – Breach of Contract

Morris asserts a claim in Count I of her Complaint for breach of contract. Walmart argues Morris fails to state a claim for breach of contract because the Check Policy permitted it to collect the payment and a return fee of $25.00 when a check was returned unpaid, and there is no contractual obligation requiring Walmart to make only one combined attempt to collect both amounts.  Therefore, Walmart argues, it was within the Check Policy to make multiple attempts to collect the payment and the return fee separately.  Walmart further argues Morris's own material breach precludes any relief she seeks.

##### a.   *Allegations of Breach of Contract*

"Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).  But a motion to dismiss should not be granted where the contract plausibly "leaves doubt as to the parties' intent." *Stocco v. Gemological*

*Inst. of Am., Inc.*, 975 F.Supp.2d 1170, 1179 (S.D. Cal. 2013) (citing *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)).  *See also Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 1866261, *4 (D. Alaska April 14, 2020) (stating that where it is plausible that the contract is reasonably susceptible of two meanings, "the contract may be ambiguous and defendant's motion to dismiss plaintiff's breach of contract claim must be denied").

Morris's breach of contract claim focuses on the portion of the Check Policy that provides: "If your check's returned unpaid, you also authorize us to collect a return payment and a return fee of $25.00 by an EFT(s) or drafts(s) drawn from your account."  (Doc. 3 at 6.)

Morris argues the Check Policy has one reasonable meaning – if a check is returned unpaid, Walmart can make an additional debit attempt to collect the amount of the check, together with $25 for the Return Fee.  According to Morris, the Check Policy does not authorize Walmart to make separate and repeated debit attempts to collect the $25 Return Fee.

Walmart, on the other hand, argues that a reasonable interpretation of the Check Policy means that it may collect both the amount of the unpaid check and a Return Fee, without being limited to only one attempt to recover the Return Fee. Walmart further argues that it did not promise to collect the unpaid check and Return Fee in one single transaction; multiple transfers were expressly allowed.

6

Considering the factual allegations in the Complaint, together with all reasonable inferences that can be drawn from those facts in favor of each party, Morris and Walmart each assert plausible interpretations of the Check Policy. As Morris points out, the Check Policy authorizes the collection of "a return fee," which is singular and not plural. Thus, the Check Policy arguably did not authorize Walmart to make multiple attempts to collect the Return Fee.

Conversely, Walmart points out that the Check Policy allowed it "to collect" the Return Fee, not just attempt collection. This could reasonably be interpreted to mean that Walmart was not constrained to only one attempt to collect, but could make multiple attempts if the collection attempts were unsuccessful. Walmart also notes that the Check Policy references plural "EFT(s)," which, Walmart argues, contemplates multiple collection efforts.

With regard to whether the Check Policy allowed Walmart to decouple the Return Fee from the check amount, Morris relies on the conjunctive "and" in the clause, which authorizes Walmart to "collect a return payment and a return fee," to argue that Walmart was not authorized to debit each separately. This clause can plausibly be interpreted to mean only a single, combined debit would be attempted.

Walmart, however, emphasizes the "(s)" at the end of the words "by an EFT(s) or drafts(s)" to argue the Check Policy used language indicating the potential for multiple debits. The inclusion of "(s)" could plausibly be construed to

7

mean that the authorization to collect the payment and Return Fee was not confined to a single, combined transaction.

Thus, both Morris and Walmart have set forth plausible, opposing interpretations of the Check Policy.  As noted above, resolving the potential ambiguity is not appropriate on a motion to dismiss.  *Stocco*, 975 F.Supp.2d at 1179; *Coleman,* 2020 WL 1866261 at *4.  Accordingly, without reaching the merits of the controversy at this early stage, the Court finds that Morris's claim for breach of contract is facially plausible.

      b.    *Morris's Material Breach*

Walmart also argues Morris's own material breach bars her claim for breach of contract, in any event.  Walmart contends that Morris's failure to pay for the goods she received was a material breach of the bargain between the parties, thus discharging Walmart's performance obligations.

Generally, "a party's failure to satisfy a contractual obligation to make a payment to the other party constitutes a 'material breach' and, under Montana law, relieves the other party from further performance under the contract." *Bertelsen v. CitiMortgage, Inc.*, 2017 WL 1368289, *2 (D. Mont. April 7, 2017) (citing *James Talcott Constr., Inc. v. P&D Land Enters.*, 141P.3d 1200, 1206-07 (Mont. 2006) and *Rogers v. Relyea*, 601 P.2d 37, 40 (Mont. 1979)).  Nevertheless, this Court has recognized an exception to the general rule.  In *Bertelsen*, the Court held that a

8

party's default does not excuse the other party's performance of duties that were triggered by the default. *Bertelsen v. CitiMortgage, Inc.*, 2017 WL 1368289 at *3.

In *Bertelsen*, the plaintiff defaulted on his loan obligations to CitiMortgage and fell behind in his loan payments. For the next several years, he sought various loan modifications from the bank, without success. He ultimately brought an action against CitiMortgage, asserting various claims for relief and alleging that the rejection of his modifications caused him damages.

The bank moved for summary judgment on the plaintiff's breach of contract claims on the grounds that the plaintiff breached the contract first by defaulting on his loan, relieving it of the obligation to perform under the contract. *Id.* at *2. The Court rejected the argument, explaining that the plaintiff's default did not excuse any subsequent duties imposed on the bank that were triggered by the default. The Court found that "[b]ecause all of [the borrower's] breach of contract claims arise from alleged contractual duties imposed upon [the bank] triggered by [the borrower's] default, they are not precluded by his initial breach." *Id. See also Sinclair v. Donovan*, 2011 WL 5326093, at *8 (S.D. Ohio Nov. 4, 2011) (stating that it "would be an absurd result if the [defendants] were allowed to ignore the contract terms drafted to govern their post-default conduct on the grounds that the [plaintiffs] have defaulted").

Here, similar to *Bertelsen*, Morris's breach of contract claim arises from Walmart's alleged contractual duties that were triggered by Morris's failure to pay. Had Morris's check not bounced, the portion of the Check Policy at issue would not have been triggered. But once Morris's check was returned, Walmart had an obligation to comply with the terms of the Check Policy, regardless of Morris's initial default. Accordingly, Morris's alleged breach does not preclude her breach of contract claim.

Therefore, the Court recommends Walmart's motion to dismiss Morris's claim for breach of contract in Count I be denied.

**B.     Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing**

In Count II of her Complaint, Morris asserts a claim for breach of the covenant of good faith and fair dealing. Under Montana law, "every contract, regardless of type, contains an implied covenant of good faith and fair dealing." *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990) *overruled on other grounds by Arrowhead School District No. 75 v. Klap*, 79 P.3d 250, 264 (2003). The covenant requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Id*; Mont. Code Ann. § 28-1-211. A breach of the covenant is generally only actionable as a breach of contract and compensable by contract damages. *Id.*

Nevertheless, a breach of the implied covenant of good faith and fair dealing may, in exceptional circumstances, also give rise to an action in tort. *Id*. at 776. A tort remedy may be available when the breach of the covenant occurred in the context of a special relationship between the parties. *Id.*

In this case, Morris does not specify in her Complaint whether she is seeking a contact or tort remedy, although she does allege that "a special relationship existed between Plaintiff/Class and Wal-Mart," and seeks the recovery of punitive damages for Walmart's alleged "fraud and/or malice."

Walmart addresses both claims in its motion to dismiss. With respect to Morris's contract claim, Walmart argues Morris's claim for breach of the implied covenant of good faith and fair dealing fails because she seeks to impose obligations on Walmart that directly contradict the contract's express terms. Essentially, Walmart asserts Morris's claim fails because it did not breach the Check Policy. As discussed above, however, Morris has asserted a plausible claim for breach of contract. Hence, her contract claim for breach of the implied covenant of good faith and fair dealing is not subject to dismissal on that basis.

Walmart also argues that Morris has not adequately alleged a tort claim for bad faith breach of contract, because she has not pleaded "exceptional circumstances" showing a "special relationship" between the parties. *Story v. City of Bozeman*, 791 P.2d 767, 776 (Mont. 1990). Morris does not oppose Walmart's

11

motion with respect to this argument.  Therefore, to the extent Morris intended to assert a tort claim in Count II, it appears she has abandoned the claim.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his claim[.]").

Nevertheless, it is also apparent that this case does not involve the type of special relationship necessary for the foundation of a tort remedy.  In recognizing a tort remedy in *Story*, the Montana Supreme Court adopted the following essential elements to establish a special relationship:

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Story*, 791 P.2d at 776.

The Montana Supreme Court has recognized that "[t]he five elements are conjunctive, and thus the failure to prove one defeats the entire claim." *Warrington v. Great Falls Clinic, LLP*, 443 P.3d 369, 374 (Mont. 2019).

Morris recites several of these elements in her Complaint, along with conclusory allegations to support their application here.  Absent from the

Complaint, however, are any allegations or facts which would support the second element – a non-profit motivation for entering into the contract. Instead, Morris alleges that "the motivation for Plaintiff/Class entering into the contract was a consumer motivation, i.e., to purchase a consumer good," which is obviously not equivalent to "a non-profit motivation, i.e., to secure peace of mind, security, future protection." *Story*, 791 P.2d at 776.

In short, this case does not involve the type of special relationship necessary to create a tort remedy; it involves a typical retail transaction. As Walmart points out, extending the application of "exceptional circumstance" and "special relationship" to a common retail transaction would render those concepts meaningless.

The Court, therefore, recommends that Walmart's motion to dismiss Plaintiffs' claims in Count II be granted in part and denied in part.

C. **Count III – Unjust Enrichment**

Morris's final claim is for unjust enrichment. Walmart argues Morris's claim for unjust enrichment fails because she does not and cannot allege that Walmart kept any money or retained any benefit.

"The essential elements of an unjust enrichment claim are: (1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the benefit; and (3) the other's acceptance or retention of the benefit under

13

circumstances that would render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018).

Again, Morris has again effectively abandoned her unjust enrichment claim by making no effort to defend it in response to Walmart's motion. *See Carvalho*, 629 F.3d at 888.

Moreover, Morris does not allege any facts in the Complaint to show she conferred a benefit on Walmart, or that Walmart retained a benefit or actually received anything. In fact, it appears Walmart has never recovered the amount due under the transaction. Rather, Morris alleges that "the Bank" was unjustly enriched. (Doc. 3 at ¶ 4.)

Accordingly, Walmart's motion to dismiss the claim for unjust enrichment in Count III, should be granted.

**D. Leave to Amend**

A court may grant a motion to dismiss with or without leave to amend. It appears highly unlikely that that Morris can amend her complaint to state a tort claim for breach of the implied covenant of good faith and fair dealing or for unjust enrichment. As discussed above, the transaction at issue did not involve a nonprofit motivation necessary for a tort claim for breach of the covenant, nor did Walmart retain any benefit from the transaction as required for a claim of unjust

enrichment. Nevertheless, the Ninth Circuit has made clear "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Therefore, it is recommended that Walmart's motion be granted with leave to amend.

## IV.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Walmart's Motion to Dismiss be **GRANTED in part and DENIED in part**, as follows:

1. Denied with respect Morris's breach of contract claim in Count I;

2. Denied as to Morris's contract claim, but granted as to Morris's tort claim, for breach of the covenant of good faith and fair dealing in Count II; and

3. Granted as to Morris's unjust enrichment claim in Count III.

4. Dismissal should be with leave to amend.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 23rd day of January, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge