IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BRANDY MORRIS, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>WALMART, INC., previously known as Wal-Mart Stores, Inc., TELECHECK SERVICES, LLC, and TELECHECK SERVICES, INC.,<br><br>        Defendants. | CV 22-16-BLG-SPW<br><br><br>ORDER ON MAGISTRATE'S FINDINGS AND RECOMMENDATIONS |

Before the Court is United States Magistrate Judge Timothy Cavan's Findings and Recommendations, filed May 17, 2024. (Doc. 119). Judge Cavan recommends this Court deny Defendant TeleCheck Services, LLC and TeleCheck Services, Inc.'s ("TeleCheck") Motion to Dismiss (Doc. 90) on the grounds the motion relitigates issues the Court addressed in its order on Defendant Walmart, Inc.'s ("Walmart") earlier Motion to Dismiss (Docs. 31, 32), which is prohibited by the law of the case doctrine. (Doc. 119 at 6–9).

TeleCheck timely filed an objection disagreeing with Judge Cavan's application of the law of the case doctrine. (Doc. 139 at 5). TeleCheck lodges three other objections, two of which pertain to the additional legal arguments in TeleCheck's motion and one of which pertains to Judge Cavan's characterization of

TeleCheck's alleged conduct, as outlined in Plaintiff Brandy Morris's Amended Complaint. (*Id.* at 5–6).

Morris timely filed a response rebutting each of TeleCheck's arguments. (Doc. 142). TeleCheck filed a reply. (Doc. 155). The Court will not consider the reply, as the Local Rules prohibit a party from filing a reply to Findings and Recommendations. D. Mont. L.R. Civ. 72.3(b).

For the following reasons, the Court rejects Judge Cavan's Findings and Recommendations on the law of the case doctrine and adopts his findings on the consideration of extrinsic evidence. The Court overrules TeleCheck's other objections and adopts Judge Cavan's recommendation that the Court deny TeleCheck's Motion to Dismiss.

## I.   Legal Standard

### A.   *Findings and Recommendations*

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to will be reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a

mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citation omitted).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id*. Objections are not "a vehicle for the losing party to relitigate its case." *Hagberg v. Astrue*, CV-09-01-BLG, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (citation omitted).

B.    *Motion to Dismiss for Failure to State a Claim*

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the rule "does not require detailed factual allegations … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A party can test a complaint's legal sufficiency by moving to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the complaint alleges enough facts to draw a reasonable inference that the accused is liable.  *Id.*  Though the complaint does not need to provide detailed factual allegations, it cannot merely assert legal conclusions.  *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, the Court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant.  *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012).  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## II.   Background

TeleCheck objects to only one of Judge Cavan's factual findings—his description of the conduct Morris's lawsuit targets.  Since resolving that objection requires a full understanding of the facts and no other factual findings are objected to, the Court will provide Judge Cavan's recitation of the facts here, then resolve TeleCheck's objection.

Morris brings this action challenging Defendants' practices of (1) charging multiple returned check fees for the same check and (2) reprocessing checks and

4

returned check fees as separate items. Morris alleges these practices breach the check policy that is posted at checkout aisles in Walmart's Montana stores ("the Check Policy"). Morris alleges TeleCheck is liable on grounds that it serves as Walmart's check processing partner and processes returned check fees on Walmart's behalf.

> The Check Policy reads:
>
> When you provide a check as payment, you authorize us to use information from your check to process a one-time Electronic Funds Transfer (EFT) or a draft drawn from your account, or to process the payment as a check transaction. When we use information from your check to make an EFT, funds may be withdrawn from your account as soon as the same day you make your payment, and your financial institution will not return your check.
>
> If your check's returned unpaid, you also authorize us to collect a return payment and a return fee of $25.00 by an EFT(s) or drafts(s) drawn from your account.

(Doc. 80 ¶ 21).

Morris alleges that she wrote a check for $139.71 at a Walmart store in Montana on January 2, 2018. (*Id.* ¶ 11). The check was returned unpaid by Morris's bank, and her bank assessed a $30 NSF Fee. (*Id.* ¶ 12.)

Six days later, on January 8, 2018, Defendants attempted to process the check again. (*Id.* ¶ 13). The check was again returned unpaid by Morris's bank, and Morris was charged another $30 NSF Fee by the bank. (*Id.*).

After the second returned check, Defendants attempted to withdraw a $25 Return Fee from Morris's bank account on January 19, 2018. (*Id.* ¶ 14). Morris's account did not have sufficient funds to cover the Return Fee, so the attempt was returned unpaid, and Morris's bank charged her another $30 NSF Fee. (*Id.*).

Defendants again attempted to deduct a $25 Return Fee from Morris's account on January 26 and February 2, 2018. (*Id.* ¶¶ 16–17). The attempts were again returned unpaid, and Morris's bank charged her two additional $30 NSF Fees. (*Id.*).

In total, Defendants attempted five separate withdrawals from Morris's account—two for the amount of the check, and three for the collection of the Return Fee. As a result of Defendants' reprocessing practices, Morris was assessed $150 in NSF Fees by her bank. (*Id.* ¶ 18).

Morris initially brought this case as a class action solely against Walmart and asserted claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and unjust enrichment (Count III). (Doc. 3).

The Court considered a motion to dismiss filed by Walmart and determined that Morris's claims for breach of contract and breach of the implied covenant of good faith and fair dealing were plausible. (Docs. 31, 32). Specifically, the Court found that both Morris and Walmart set forth plausible, opposing interpretations of the Check Policy and that resolving the potential ambiguity was not appropriate on a motion to dismiss. (Doc. 31 at 7–8). The Court, therefore, denied Walmart's

6

motion to dismiss Count I and Count II to the extent it was based on a contract theory. (*Id.* at 7–11). The Court granted Walmart's motion as Count II to the extent it was based on a tort theory, as well as Count III. (Docs. 31, 32).

Thereafter, Morris filed the Amended Complaint adding TeleCheck. (Doc. 80). Other than adding TeleCheck and omitting the dismissed claims, the Amended Complaint is substantially identical to the original Complaint subject to Walmart's motion to dismiss. In the Amended Complaint, Morris reasserts the claims for breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II). (*Id.* ¶¶ 46–62).

TeleCheck now moves to dismiss the Amended Complaint, arguing Morris did not plausibly allege a claim for breach of contract or breach of the duty of good faith and fair dealing. (Doc. 90). TeleCheck makes three arguments: First, the Check Policy is a disclosure, not a contract. (Doc. 91 at 17–22, 29–30). Second, even if the Check Policy is a contract, the Check Policy must be read in tandem with the National Automated Clearing House Association ("NACHA") Rules, which govern electronic funds transfers made via the Automated Clearing House ("ACH") Network. (*Id.* at 22–28). According to TeleCheck, the NACHA Rules unambiguously allow the five attempted withdrawals from Morris's account, and so Morris's breach of contract claim fails. (*Id.*). And third, Morris's injuries were

caused by her bank, not by TeleCheck, since she seeks to recover the NSF Fees charged by her bank. (*Id.* at 30–31).

With respect to the facts as outlined by Judge Cavan, TeleCheck objects to Judge Cavan's finding that Morris seeks to challenge "'Defendants' practices of ... charging multiple returned check fees for the same check.'" (Doc. 139 at 14–15 (quoting Doc. 119 at 2)). TeleCheck contends that Morris actually challenges "Defendants' attempt to debit the same Return Fee from Morris's account, not multiple fees." (*Id.* at 15).

Morris responds that TeleCheck's objection is a mere "quibble[]" and that Judge Cavan's characterization of Morris's claim is accurate. (Doc. 142 at 9). Morris argues that Judge Cavan "correctly summarizes Plaintiff's claims, which are that Defendants Walmart and TeleCheck breached the contract when they debited Plaintiff's account *five separate times* for a single returned check." (*Id.* (emphasis in original)).

As an initial matter, TeleCheck's objection is proper, and the Court reviews the issue de novo. Morris's Amended Complaint states, "Defendants Breached their Contract with Customers When they Assessed More than One Return Fee on the Same Check." (Doc. 80 at 6). Accordingly, Judge Cavan correctly restated how Morris characterized her claim. The Court overrules TeleCheck's objection and adopts Judge Cavan's statement of the facts in full.

What TeleCheck actually seems to argue is that *Morris's* characterization of her claim does not mirror her recitation of the facts. On this point, the Court agrees. Morris's Amended Complaint describes Defendants' two attempts to process Morris's check and three attempts to withdraw the $25 Return Fee from Morris's account. Defendants were never paid the amount of the check or the Return Fee, so it is not accurate for Morris to state that Defendants assessed more than one Return Fee on the same check. Rather, Defendants attempted to process the same check multiple times and to assess one Return Fee on the same check multiple times. Each attempt caused Morris's bank to return the assessment as unpaid and to impose on Morris a new $30 NSF fee.

## III.  Discussion

In his Findings and Recommendations, Judge Cavan concluded that because Morris's Complaint and Amended Complaint were substantively the same, the law of the case doctrine prohibited the Court from relitigating the issues that Walmart's earlier motion to dismiss raised and the Court adjudicated. (Doc. 119 at 6–7). He rejected TeleCheck's argument that it presented substantially different evidence—the NACHA Rules—and thus the law of the case doctrine did not apply on the grounds that the NACHA Rules are extrinsic evidence the Court cannot consider on a motion to dismiss. (*Id.* at 7–9).

9

TeleCheck makes the following objections to Judge Cavan's legal conclusions:

(1) Judge Cavan erred in concluding that the law of the case precludes the Court from considering whether the Check Policy is ambiguous;

(2) Judge Cavan erred in concluding that the NACHA Rules are extrinsic evidence not subject to judicial notice;

(3) Judge Cavan failed to consider TeleCheck's argument that the Check Policy is not a contract;

(4) Judge Cavan failed to consider TeleCheck's argument that Morris's injuries were caused by her bank, not by Defendants.

(Doc. 139 at 5, 16–17).

The Court will evaluate whether each objection is proper or improper and then evaluate their merits under the applicable standard of review in turn.

## A.     Law of the Case

TeleCheck first objects to Judge Cavan's application of the law of the case doctrine. "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) (holding that a judicial determination at one stage of a proceeding "should continue to govern the same issues in subsequent stages in the same case."); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035,

1042 (9th Cir. 2018) (quoting *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016)) ("'The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"). A court may depart from the law of the case only if: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Alexander*, 106 F.3d at 876.

Before Judge Cavan, Morris argued that TeleCheck's motion was an attempt to relitigate issues already decided in the litigation and therefore should be denied under the law of the case doctrine. (Doc. 105 at 14). Morris contended that no exception to the law of the case doctrine applied because TeleCheck's only basis for revisiting the Court's decision was the NACHA Rules, which are extrinsic evidence that the Court cannot consider on a motion to dismiss. (*Id.* at 14–15). Removing the NACHA Rules from TeleCheck's assertions, Morris maintains that "TeleCheck is left with no argument" that the exceptions to the law of the case doctrine apply. (*Id.* at 15).

TeleCheck replied that the law of the case doctrine does not apply because "TeleCheck makes substantially different arguments relying on binding law that was not previously presented to this Court," namely that the Check Policy is a disclosure,

not a contract, and that the NACHA Rules render Morris's proposed interpretation of the Check Policy unreasonable and absurd. (Doc. 114 at 9–10). TeleCheck further argued the law of the case doctrine does not prevent the Court from "revis[ing] an interlocutory order at any time prior to final judgment" under Rule 54(b). (*Id.* at 10).

Judge Cavan recommended the Court deny TeleCheck's motion on the grounds that the law of the case doctrine "precludes TeleCheck's challenge to the Court's prior determination that Morris stated a plausible claim for breach of contract and breach of the covenant of good faith and fair dealing." (Doc. 119 at 9). Judge Cavan found that none of the exceptions to the law of the case doctrine applied, including the substantially different evidence exception invoked by TeleCheck. (*Id.* at 7–9). On that exception, Judge Cavan found that the NACHA Rules are extrinsic evidence that the Court cannot consider on a motion to dismiss and therefore cannot constitute substantially different evidence. (*Id.* at 7–8).

In its objection, TeleCheck argues that Judge Cavan erred in concluding that the law of the case applies. (*Id.* at 5, 7–9). TeleCheck primarily asserts that the law of the case doctrine does not apply because the Court has not issued a final judgment in the matter or been deprived of jurisdiction. (*Id.* at 8 (citing *Askins*, 889 F.3d at 1042–43)). TeleCheck also argues that the law of the case does not bar consideration

of issues raised for the first time on a motion to dismiss, as is the case here. (*Id.* at 9).

The Court finds TeleCheck's objection is improper because it raises the same arguments presented to Judge Cavan. Reviewing Judge Cavan's finding for clear error, the Court finds he committed clear error because the law of the case does not apply when the plaintiff has filed an amended complaint. When a plaintiff has amended their complaint, the law of the case doctrine does not apply because "the new complaint is the only operative complaint before the district court." *Askins*, F.3d at 1043. The "original pleading no longer performs any function and is treated thereafter as non-existent[.]" *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 2012) (internal citation and quotation marks omitted). Upon the filing of a motion to dismiss on an amended complaint, a court is not "bound by any law of the case" in resolving the motion, even if the amended complaint "is substantially the same as the initial complaint." *Askins*, F.3d at 1043. Instead, the court must determine anew the sufficiency of the complaint. *Id.* In doing so, the court "may decide the second motion to dismiss in the same way it decided the first," or "correct any errors or misunderstandings" in its order on the original complaint. *Id.*; *see, e.g. San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1046–47 (S.D. Cal. 2019).

Here, Morris amended her complaint after the Court's order on Walmart's first motion to dismiss. (Doc. 80). Thus, under *Askins*, the law of the case doctrine does not apply, even though Morris's Amended Complaint only added TeleCheck as a party and otherwise is, as Judge Cavan wrote, "substantially identical to the original Complaint," (Doc. 119 at 4). Accordingly, the Court sustains TeleCheck's objection to Judge Cavan's conclusion that the law of the case doctrine applies and rejects Judge Cavan's findings on the matter, though not for the reasons TeleCheck proffers.

### B.   Consideration of the NACHA Rules

Having determined the law of the case doctrine does not apply, the Court must consider TeleCheck's argument that Morris failed to state a plausible claim for breach of contract in light of the NACHA Rules. Since TeleCheck's argument hinges on the Court's ability to consider the NACHA Rules on a motion to dismiss, and Morris contends the Court cannot consider them as extrinsic evidence at this stage, the Court must first resolve this conflict before ruling on the plausibility question. Judge Cavan made findings on whether the NACHA Rules were extrinsic evidence that the Court could consider at this procedural stage, which TeleCheck objected to, so the Court will review his findings on the matter. (*See* Doc. 119 at 7; Doc. 139 at 10).

14

It is well-settled under Montana law[1] that, "[w]here the language of an agreement is clear and unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written." *Carelli v. Hall*, 926 P.2d 756, 761 (Mont. 1996) (citing *Audit Servs., Inc. v. Systad*, 826 P.2d 549, 551 (Mont. 1992)). Whether or not an ambiguity exists is a question of law for the court to decide. *Id.* Only where an ambiguity exists may the court turn to extrinsic evidence to determine the intent of the parties. *Id.*; *Monte Vista Co. v. Anaconda Co.*, 755 P.2d 1358, 1362 (Mont. 1988). "An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations." *Wray v. State Comp. Ins. Fund*, 879 P.2d 725, 727 (Mont. 1994) (citation omitted).

At the same time, "a district may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[2] Two exceptions exist. First, a court may consider "material which is properly submitted as part of the complaint." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County*

---

[1] The *Erie* doctrine requires federal courts sitting in diversity to apply state substantive law and federal procedural law. *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 755 (9th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Because the Court is sitting in diversity, Montana's substantive law on contract interpretation applies. *McKain v. Safeco Ins. Co. of Am.*, 623 F. Supp. 3d 1117, 1120 (D. Mont. 2022).

[2] Because what evidence the Court can consider on a motion to dismiss is a procedural issue, the Court applies federal law under *Erie*.

*of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  Materials which are properly submitted as part of the complaint include documents physically attached to the complaint, and documents whose authenticity is not contested and which the plaintiff's complaint necessarily relies on.  *Lee*, 250 F.3d at 688 (internal citation and quotation omitted).  Second, a court may consider judicially noticed facts.  *Id.*  The Court "may take judicial notice of matters of public record."  *Id.* (internal citation and quotation omitted).

Judge Cavan held that the NACHA Rules constitute extrinsic evidence that the Court could not consider on a motion to dismiss because they are rules promulgated by a private financial industry organization that govern private sector contracts. (Doc. 119 at 7 (citing *Ham v. JPMorgan Chase Bank, N.A.*, No. 3:23-cv-05698, 2024 WL 1345078, at *8 (W.D. Wash. Mar. 29, 2024))).  He noted that the NACHA Rules are not freely available but instead are maintained behind a paywall and cost about $100 to access. (*Id.* at 7–8 (citing *Wilkins v. Simmons Bank*, 3:20-cv-116, 2023 WL 1868142, at *5 (E.D. Ark. Feb. 9, 2023))).  Judge Cavan also concluded that the Amended Complaint did not refer to or in anyway incorporate the NACHA Rules (*id.* at 8), and that they are not subject to judicial notice, (*id.* (citing *O'Donovan v. CashCall, Inc.*, No. C 08-03174, 2009 WL 1833990 (N.D. Cal June 24, 2009))).  Accordingly, Judge Cavan concluded that though the NACHA Rules

"may be relevant to the claims in this case, they cannot be considered at the motion to dismiss stage." (*Id.*).

TeleCheck objects to Judge Cavan's finding that the NACHA Rules are extrinsic evidence. (Doc. 139 at 10). TeleCheck asserts that the NACHA Rules are "the binding law of the check processing industry" and therefore are not extrinsic evidence. (*Id.*). TeleCheck argues that the cases on which Judge Cavan relied are not binding and are distinguishable. (*Id.* at 12). This objection is proper because it identifies what it believes to be Judge Cavan's incorrect application of the cited case law and argues why such application is incorrect. Accordingly, the Court reviews Judge Cavan's findings on the matter de novo.

The Court agrees with Judge Cavan that the NACHA Rules are extrinsic evidence. Nearly every case presented to or found by the Court considered the NACHA Rules to be extrinsic evidence. *See Richard v. Glens Falls Nat'l Bank*, 1:20-cv-00734, 2021 WL 810218, at *11 (N.D.N.Y. Mar. 3, 2021) (declining to consider the NACHA Rules on a motion to dismiss to resolve ambiguities in the contract because they are extrinsic evidence); *Encarnacion v. Workers Credit Union*, No. 21-cv-40077, 2022 WL 16574051, at *5 (D. Mass. Apr. 14, 2022) (same); *Wilkins*, 2023 WL 1868142, at *5 (characterizing the NACHA Rules as extrinsic evidence on summary judgment); *see also O'Donovan*, 2009 WL 1833990, at *12 (declining to take judicial notice of NACHA Rules on a motion to dismiss); *Cachet*

*Fin. Servs. v. C & J Assocs., Inc.*, 373 F. Supp. 3d 1303, 1304 n.2 (N.D. Cal. 2019)

(taking judicial notice of the NACHA Rules on summary judgment); *cf. Young v.*

*Wells Fargo Bank, N.A.*, 717 F.3d 224, 237 (1st Cir. 2013) (characterizing the rules

of a federal program incentivizing lenders and loan servicers to offer loan

modifications to eligible home owners as extrinsic evidence that the court could not

use on a motion to dismiss to resolve ambiguities in loan modification agreement

between the plaintiff and her bank).    The only case the Court found that

acknowledged it could consider the NACHA Rules on a motion to dismiss is

distinguishable because the parties there agreed that the NACHA Rules governed.

*Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-cv-0229, 2020 WL 1866261,

at *4 (D. Alaska Apr. 14, 2020).[3]  Since that is not the case here, the Court does not

find *Coleman* persuasive.    Instead, the great weight of caselaw characterizes the

NACHA Rules as extrinsic evidence.

  That the NACHA Rules are controlling on Defendants does not make them

"controlling law," as TeleCheck asserts.  Rather, it appears that the NACHA Rules

are private rules imposed by NACHA on institutions that choose to participate in the

ACH network. *See* 12 Sarah Jane Hughes, *Hawkland UCC Series* § 1:22 (Apr. 2024)

---

[3] *Coleman* ultimately did not consider the NACHA Rules because neither party provided the Court with a copy.  2020 WL 1866261, at *4.  *Coleman*'s logic that a court can consider the NACHA Rules on a motion to dismiss when the parties agree also is not universally accepted by courts. *See Richard*, 2021 WL 810218, at *11 (refusing to consider the NACHA Rules on a motion to dismiss despite the parties' agreement that they governed, since the rules are extrinsic evidence).

(giving background on ACH transactions made under the NACHA Rules and NACHA member institutions and clearing organizations). Those rules might be mandatory on those participants in the ACH network, but that certainly does not make them "law." Accordingly, the Court finds that the NACHA Rules are extrinsic evidence, overrules TeleCheck's objection, and adopts Judge Cavan's findings and recommendation on the matter in full.

Having found the NACHA Rules are extrinsic evidence, the Court must look only to the four corners of the Check Policy to determine if it is ambiguous. *Carelli*, 926 P.2d at 761. The Court concludes it is ambiguous for the same reasons as found in the Court's order on Walmart's motion to dismiss (Doc. 31 at 7–8), since Morris's Complaint and Amended Complaint are substantively identical, except for the addition of TeleCheck as a party. (*Compare* Docs. 3 with 80).

Because the language of the Check Policy is ambiguous, the Court normally would look to extrinsic evidence—here, the NACHA Rules—to resolve the ambiguity. However, the Court cannot consider extrinsic evidence on a motion to dismiss, unless either of the exceptions apply. *Lee*, 250 F.3d at 688. Thus, the Court next must decide if it can consider the NACHA Rules either as properly incorporated into Morris's Amended Complaint or a matter of which the Court can take judicial notice.

TeleCheck objects to Judge Cavan's finding that the Amended Complaint does not refer to, or in any way incorporate, the NACHA Rules on the grounds that that the NACHA Rules are incorporated by reference into Morris's agreement with her bank. (Doc. 139 at 10). Morris responds that TeleCheck's argument is "nonsense." (Doc. 142 at 7). Morris first notes that the contract between her and her bank is not in the record. (*Id.*). Even if it was, Morris points out that TeleCheck is not a party to the contract. (*Id.*). Citing to the cases in Judge Cavan's order, Morris argues that "courts routinely decline to find that NACHA Rules are incorporated even into contracts directly between accountholders and their banks." (*Id.* at 7–8 (citing *Wilkins*, 2023 WL 1868142, at *5)).

As an initial matter, the Court finds that TeleCheck's argument that the NACHA Rules were incorporated into Morris's deposit agreement with her bank is an improper objection because, despite having the opportunity to argue it in front of Judge Cavan, TeleCheck did not fully brief it. TeleCheck referenced this argument briefly in its opening brief in front of Judge Cavan in a footnote in its initial summary of its argument. (Doc. 91 at 8 n.2). Morris then asserted in her response that the argument is completely undeveloped. (Doc. 105 at 13). TeleCheck did not flesh it out on reply. The Court reviews this issue for clear error and finds none.

"For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms."

Francis C. Amendola, et al., C.J.S. *Contracts* § 419 (May 2024). "A reference to another document must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the parties." *Id*.

The Court concludes that the contract between Morris and her bank, and by extension the NACHA Rules, are not incorporated into the Amended Complaint. First, Morris never mentions the contract with her bank, let alone the NACHA Rules, in her Amended Complaint. The absence of her contract from the Amended Complaint is sufficient basis on its own to decline to find it, and by extension the NACHA Rules, are incorporated by reference. Second, even if the contract was mentioned in Morris's Amended Complaint, its terms— that it is subject the NACHA Rules (Doc. 139-1 at 23)—does not make the NACHA Rules easily available or known to Morris. Morris is a mere customer of a bank with no apparent specialized knowledge, and the NACHA Rules are hundreds of pages long. Further, the NACHA Rules can be accessed only by either paying $100 or going through a multi-step process to redeem a modified version for free. *See Wilkins*, 2023 WL 1868142, at *5. Accordingly, the NACHA Rules are not incorporated into the Amended Complaint.

As to whether the NACHA Rules are subject to judicial notice, Judge Cavan determined that they are not because they are released by a private industry organization rather than a government agency or other type of official body, not

generally known within the jurisdiction, and not subject to verification by resources whose accuracy cannot be reasonably questioned.   (Doc. 119 at 8 (quoting *O'Donovan*, 2009 WL 1833990, at \*12)).   TeleCheck objects to this finding on the grounds that the NACHA Rules apply to all financial institutions, merchants, and processors that participate in the processing of ACH transactions in Montana and therefore are generally known in this jurisdiction and cannot be reasonably questioned. (Doc. 139 at 14).  Morris did not address this issue in her response to TeleCheck's objections.  She argued in front of Judge Cavan that the Court should adopt the Northern District of California's reasoning in *O'Donovan*.  (*See* Doc. 105 at 10–11 (quoting *O'Donovan*, 2009 WL 1833990, at \*12)).

Courts are mixed on whether to take judicial notice of the NACHA Rules. *Compare O'Donovan*, 2009 WL 1833990, at \*12 (declining to take judicial notice of NACHA Rules)[4] with *Cachet Fin. Servs.*, 373 F. Supp. 3d at 1304 n.2 (taking judicial notice of the NACHA Rules on summary judgment).   Reviewing the

---

[4] In TeleCheck's reply to its motion to dismiss, it argues that even though *O'Donovan* did not take judicial notice of the NACHA Rules, the court "still properly considered the legal argument related to application of the NACHA rules, thus emphasizing the request for judicial notice was wholly unnecessary in any regard." (Doc. 114 at 4 (citing *O'Donovan*, 2019 WL 1833990, at \*4)).  This is an incorrect reading of *O'Donovan*.  *O'Donovan* described the defendant's reliance on the NACHA Rules' provision that allowed multiple attempts to withdraw funds when an account has insufficient funds to cover a payment as "unpersuasive" because the federal law governing the loan contract "does not contain a similar provision, and there are no implementing regulations under the statute that permit this practice without the consent of the consumer."  2019 WL 1833990, at \*4.  In other words, the court held that the practice authorized by the NACHA Rules was irrelevant to the court's decision on the motion to dismiss because that practice was not authorized by federal statute or regulation—the only rules binding on the court on a motion to dismiss.  That holding can hardly be described as the court applying the NACHA Rules.

caselaw, the Court agrees with those courts that decline to take judicial notice of the NACHA Rules, as they are specialized industry rules that a person must pay to access. Given the paywall alone, the NACHA Rules cannot be classified as generally known within the jurisdiction.

*Cachet* is unpersuasive. *Cachet* reasoned that it could take judicial notice of contents of a website. 373 F. Supp. 3d at 1304 n.2. However, *Cachet* did not discuss the impact of the paywall on the accessibility—and thus general knowledge—of the NACHA Rules.

Accordingly, the NACHA Rules are extrinsic evidence that are not subject to judicial notice or incorporated into the Amended Complaint. The Court cannot consider them on a motion to dismiss to resolve the ambiguity in the Check Policy. Based on the Court's previous ruling, the Court holds that the Check Policy is ambiguous. The Court overrules TeleCheck's objection and adopts Judge Cavan's findings and recommendations on the matter in full.

C.    *Whether the Check Policy is a Contract*

TeleCheck next argues that Judge Cavan erred by failing to consider its argument that the Check Policy is a disclosure, not a contract. (Doc. 139 at 16). TeleCheck asserts that the Check Policy is a disclosure that Walmart was required by federal law to post. (*Id.*). Because Walmart is legally required to post the statement, TeleCheck contends it cannot freely consent to it, as required for a

contract under Montana law.   (*Id.* (citing Mont. Code Ann. § 28-2-102(2)). TeleCheck cites out of circuit cases finding that analogous statements required by statute were disclosures, not contracts.   (*Id.* at 16–17 (citing *Welchert v. Am. Cyanamid, Inc.*, 59 F.3d 69, 73 n.6 (8th Cir. 1995); *Caseau v. Belisle*, No. PC 01-4441, 2005 WL 5011058 (R.I. Super. Ct. Sept. 26, 2005); *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 648 (Wyo. 2003))).

Morris contends that TeleCheck's argument "cannot be squared with Montana contract and statutory law." (Doc. 142 at 9).   According to Morris, Montana law requires a variety of disclosures in specific types of contracts, the inclusion of which does not invalidate the contract in which they are included.   (*Id.*).   Morris cites a concurrence in an Eighth Circuit case holding that such statutorily mandated disclosures are not coerced and can still be a contract.   (*Id.* at 10 (citing *Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Ass'n*, 110 F.3d 547, 557 (8th Cir. 1997) (Loken, J., concurring) (citing *In re Workers' Comp. Refund*, 46 F.3d 813, 818 (8th Cir. 1995))).

TeleCheck's objection is proper, and thus the Court reviews the issue de novo. It appears Judge Cavan did not reach the issue of the nature of the Check Policy because he applied the law of the case doctrine.   Because that application was in error, his decision not to reach the question of whether the Check Policy was a contract or a disclosure also was in error.

Moving to the merits of the argument, the Court finds that TeleCheck has not met its burden to show the Check Policy is not a contract. Under Montana law, "[a]ll contracts must contain four essential elements: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration." *Keesun Partners v. Ferdig Oil Co., Inc.*, 816 P.2d 417, 421 (Mont. 1991). Consent requires "not only a valid offer by one party, but also an unconditional acceptance, according to its terms, by the other." *Id.* (internal citation omitted).

A contract of adhesion is a standard-form contract prepared by one party the terms of which the other party who adheres to the contract has little or no choice about. *Day v. CTA, Inc.*, 324 P.3d 1205, 1209 (Mont. 2014). "The weaker party accepts or rejects the contract without an opportunity to negotiate its terms." *Id.*

As TeleCheck represents (Doc. 114 at 8–9), the Check Policy is governed by 12 C.F.R. § 205.3(b). This regulation requires a person initiating the electronic fund transfer using the consumer's check for the transfer (here, TeleCheck) to "provide a notice that the transaction will or may be processed as an" electronic fund transfer and "obtain a consumer's authorization for each transfer." 12 C.F.R. § 205.3(b)(2)(ii). The consumer authorizes the transfer "when the consumer receives notice and goes forward with the underlying transfer." *Id.* For point-of-sale transfers like Morris's transaction, the notice "must be posted in a prominent and conspicuous location" and be provided to the consumer at the time of the transaction. *Id.*

"If a fee for an electronic fund transfer or check returned unpaid may be collected electronically in connection with a point-of-sale transaction" under applicable law, the person initiating an electronic fund transfer to collect the fee must provide the same notice as required for processing checks, described in § 205.3(b)(2)(ii). 12 C.F.R. § 205.3(b)(3)(ii). "The person initiating an electronic fund transfer to collect a fee for the return of an electronic fund transfer or a check that is unpaid, including due to insufficient … funds in the consumer's account, must obtain the consumer's authorization for each transfer." *Id.* § 205.3(b)(3)(i). The consumer authorizes this transfer to pay for the return fee "if the person collecting the fee provides notice to the consumer stating that the person may electronically collect the fee, and the consumer goes forward with the underlying transaction." *Id.*

The regulation effectively lays out the elements of an adhesion contract for point of transfer sales like that between Defendants and Morris. First, no party disputes that they are capable of contracting, that the goods were lawful, and consideration existed. Second, both parties consented because TeleCheck made a valid offer: TeleCheck offered to Morris the option to pay for her goods at Walmart by check, with the understanding based on the notice that the check may be processed as an electronic fund transfer and a return fee would apply. Third, Morris accepted the offer when, with the notice posted, she proceeded to pay for her goods by check. The Board of Governors of the Federal Reserve System's Official

26

Interpretation of the 2006 amendments to these regulations further emphasizes how Morris's authorization constituted the acceptance of TeleCheck's offer to pay by check:

> The Board believes that a notice provided to consumers (or posted on signage) before a consumer selects a payment method will adequately apprise consumers of the possibility that a fee may be debited from their accounts in the event an item is returned unpaid. The prior notice *allows the consumer to make an informed decision about whether to proceed with a particular payment method* (e.g., a check conversion transaction) or to pay by other means.

71 Fed. Reg. 69430-02 (Dec. 1, 2006) (emphasis added).

Contrary to TeleCheck's assertion that it had no ability to freely consent to the contract because the notice was legally required, TeleCheck is not required to offer check processing or assess return fees when checks are bounced. If it chooses to do so, as it did here, federal law requires it to post a notice so consumers are aware of the terms they agree to if they decide to pay with check.

*Welchert*, cited by TeleCheck, is distinguishable because, unlike here, the specific language of the statement challenged by the *Welchert* plaintiff was approved and required by a federal agency.[5]  The plaintiff's challenge to the statement therefore was "attacking the underpinning[] of [a] federal agency action," namely the approval of the label's language. *Garcia v. Wyeth-Ayerst Lab'ys*, 265 F. Supp.

---

[5] TeleCheck seems to agree with the notion that the applicable regulation does not require specific language in the Check Policy, though TeleCheck made this argument in a different context. (*See* Doc. 114 at 8–9).

2d 825, 831 (E.D. Mich. 2003) (citing *Welchert*, 59 F.3d at 73); *see also Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 251–52 (3d. Cir. 1999) (describing the "absolute control" by the federal agency that approved the challenged statement over the exact language of the statement).  Accordingly, *Welchert* held that the label was a federally-mandated disclosure because the specific language of the statement, not the statement itself, was required by federal law.  Here, TeleCheck is only required to post the statement that generally contains certain information (the Check Policy); it is not required to use or get approval to use specific language for the Check Policy.

*Caseau* also is inapplicable because the statute requiring the at-issue disclosures there "specifically notes that the disclosure statement is not a warranty that no deficient conditions exist" and expressly provides that no private right of action arises from the disclosure statute.  2005 WL 5011058.[6]  Here, the law requiring the posting of the Check Policy does not limit its legal import.  *Caseau* also held that the disclosures could not form the basis for a breach of contract claim because they governed only up until the closing of the real estate transaction, after which the warranty deed governed.  *Id.*  No such successive contract exists here.

Last, *Birt* is distinguishable because the facts that led the court to conclude the Federal Truth in Lending disclosures were not a contract do not exist here.  In *Birt*, upon receiving the disclosure documents, the plaintiffs were instructed not to

---

[6] Westlaw does not have pin cites for this case, nor is the case on Lexis or Bloomberg.

sign them "but to wait until closing[.]"  75 P.3d at 648.  The court held that this instruction "evince[d] [the defendant's] intent that those documents were not a contract."  *Id.*  Here, Morris received no such caution.  Additionally, the record in *Birt* lacked any evidence that the relationship between the plaintiff and defendant "ever advanced beyond" the initial negotiation stage to finalization.  *Id.*  Here, the parties finalized the transaction when Morris gave the check to Walmart and took the goods with her.

The absence of the same policy concerns regarding the finalization of the agreement to contract further undermines the applicability of the portion of *Birt* cited by TeleCheck.  The quote from *Birt* reads, in full, "Furthermore, it would certainly create havoc in the consumer lending industry were courts to declare the existence of a contract whenever a lender fulfilled its federal obligation of complete disclosure. Indeed, if an express contract was formed in such instance, the lender also could enforce it, leaving the borrower with no final opportunity to accept or reject the terms."  *Id.*  Again, here, Morris (who would be the borrower in *Birt*'s context) had the final opportunity to accept the terms of the Check Policy when she chose to give Walmart the check and take the purchased goods.

Accordingly, TeleCheck has not met its burden to show that the Check Policy is not a contract.  Dismissal on this basis is not warranted.

D.   *Cause of Morris's Injuries*

TeleCheck last objects to Judge Cavan's Findings and Recommendations on the grounds that he did not consider TeleCheck's causation argument. (Doc. 139 at 17). TeleCheck maintains that Morris's bank, not Defendants, caused her injuries, namely the assessed NSF Fees. (*Id.*). TeleCheck avers that it does not assess the NSF Fees, that Morris does not allege Defendants knew about or had any power or control over Morris's bank's fee assessment practices, and that TeleCheck is not a party to Morris's contract with her bank. (*Id.*).

Morris disagrees, asserting that the NSF Fees charged to her "were the direct result of debits that Morris alleges were not allowed by the contract between her and" Defendants. (Doc. 142 at 10). Morris maintains that the "unauthorized debits were the necessary condition for the bank fees Plaintiff suffered." (*Id.*).

TeleCheck's objection is proper, and the Court reviews it de novo. The Court finds Judge Cavan erred by not addressing TeleCheck's causation injury. However, TeleCheck's argument fails on the merits. "A party may not recover damages for breach of contract unless the party proves that the breach of contract proximately caused the damages, or that the damages likely resulted from the breach of contract." *Tin Cup Cnty. Water and/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68 (Mont. 2008). The "conduct at issue was the cause-in-fact of the alleged injury/harm and resulting damages if it 'helped produce' the alleged injury, harm, and/or resulting damages and that such injury/harm/damages 'would not have

occurred without it.'"  *Breuer v. Montana*, 539 P.3d 1147, 1160 (Mont. 2023)

(quoting *Busta v. Columbus Hosp. Corp.*, 916 P.2d 122, 139 (Mont. 1996)).  As

Morris argued, TeleCheck's attempts to process the check and withdraw the Return

Fee were necessary to cause Morris's bank to assess the NSF Fees.  In other words,

but for TeleCheck's actions, Morris would not have incurred any of the NSF Fees.

Accordingly, Morris properly alleged causation, and dismissal of her claim on this

basis is not warranted.

**IV.   Conclusion**

IT IS SO ORDERED that Judge Cavan's Findings and Recommendations

(Doc. 119) are ADOPTED IN PART and REJECTED IN PART.  IT IS FURTHER

ORDERED that TeleCheck's Motion to Dismiss (Doc. 90) is DENIED.

DATED this *13th* day of August, 2024.

SUSAN P. WATTERS
United States District Judge