# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| BRANDY MORRIS, on behalf of herself and others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC. and TELECHECK SERVICES, LLC,<br><br>Defendants. | No. 1:22-CV-00016-BMM<br><br><br>ORDER |

## INTRODUCTION

The Court addresses pending motions for summary judgment. The parties filed cross-motions for summary judgment. The Court held a hearing on U.S. Magistrate Judge Timothy Cavan's Findings & Recommendations on May 12, 2025. (Doc. 182.) The parties stipulated that Plaintiff Brandy Morris ("Morris") had standing at that hearing. The Court directed the parties to file supplemental summary judgment briefs following the hearing. (*Id.*)

Morris filed a memorandum in support of her renewed motion for partial summary judgment. (Doc. 194.) Morris seeks summary judgment only on her breach of contract claim. Defendant Walmart Inc. ("Walmart") also filed a supplemental

1

brief. (Doc. 195.) Defendant TeleCheck Services, LLC ("TeleCheck") filed a supplemental brief in support of Walmart Inc.'s motion for summary judgment. (Doc. 192.) Walmart and TeleCheck seek summary judgment on all claims. The parties filed the supplemental briefs on May 30, 2025. The Court held oral argument on June 23, 2025. (Doc. 199.)

## FACTUAL BACKGROUND

Morris, on behalf of herself and a class of similarly situated consumers, filed a class action lawsuit against Walmart and TeleCheck (collectively, "Defendants"). (Doc. 80.) The lawsuit alleges that Defendants engaged in deceptive, unfair and undisclosed practices by (a) repeatedly reprocessing checks that were returned for insufficient funds; and (b) reprocessing both paper checks and a $25 returned item fee as separate items. These repeated attempts resulted in customers incurring bank fees of $180 or more for a single bounced check. Morris alleged that this practice was neither authorized by, nor disclosed to, customers. (Doc. 80, ¶¶ 1-2.)

To illustrate, Morris cites a January 2018 incident as an example. On January 2, 2018, Morris wrote a $139.71 check at a Walmart in Montana that bounced, resulting in a $30 NSF fee from her bank. Without notice, Defendants reprocessed the same check on January 8, 2018, causing another $30 NSF fee when it bounced. Defendants attempted to collect a $25 "Return Fee" from Morris's account three

separate times (January 19, 2018, January 26, 2018, and February 2, 2018), but each attempt failed due to insufficient funds. Each failure triggered an additional $30 NSF fee. In total, Defendants made five debit attempts on Morris's account for one returned check over a month-long period, causing Morris to incur $150 in bank NSF fees—more than the original check amount of $139.71. (*Id.*, ¶¶ 10-18.)

Three disclosures govern Walmart's check processing practices. First, Walmart posts a Check Policy Disclosure at its checkout aisles under plexiglass that states customers authorize Walmart to "process a one-time Electronic Funds Transfer (EFT)" and, if a check is returned unpaid, to "collect your payment and a return fee of $25.00 by an EFT(s) or draft(s) drawn from your account." (*Id.,* ¶¶ 2; Doc. 195 at 14.) Second, when customers pay by check, the customers must sign a PIN Pad Disclosure on the electronic device that states: "I authorize you to collect my check by EFT/draft, and if returned unpaid, to collect the amount plus posted fee." (Doc. 195 at 15.) Third, customers receive a Receipt Disclosure on their paper receipt, which contains the following language: "When you pay by check, you authorize us to use its information to process an Electronic Funds Transfer (EFT) or a draft drawn on your account, or to process the payment as a check. If payment is returned unpaid, you authorize collection of your payment and the Return Fee below by EFT(s) or drafts(s) drawn on your account." (Doc. 195 at 15.)

Morris argues that Defendants breached their contract through the disclosures provided at checkout. In her original Complaint and initial briefing, Morris focused exclusively on the Check Policy Disclosure posted at Walmart checkout aisles. The policy states that customers authorize Walmart to "process a one-time Electronic Funds Transfer (EFT)" and, if a check is returned unpaid, to "collect your payment and a return fee of $25.00 by an EFT(s) or draft(s) drawn from your account." (Doc. 80, ¶¶ 21-22.) Morris argues that this language authorized only a single return fee, not multiple return fees for the same check. (*Id.*, ¶ 23.) Moreover, Morris argues that by promising to collect "payment and a return fee," Defendants represented they would make a combined collection attempt, not separate debits for the check amount and return fee. (*Id.*, ¶ 25-26.) Morris argues that Defendants failed to comply with Regulation E's requirements because they did not accurately disclose their actual fee and reprocessing practices and did not obtain valid authorization from customers to make five separate debits for a single returned check. (*Id.*, ¶¶ 19, 24.)

Morris further argues that Defendants breached the covenant of good faith and fair dealing by exercising their discretion to repeatedly debit customers' accounts in a manner that maximizes fees, contrary to customers' reasonable expectations. (*Id.*, ¶¶ 28-30.) Morris asserts that Defendants' attempts to make five separate debits for a single check exceeded the customers' reasonable expectations. (*Id.*, ¶ 30.)

4

Morris seeks to represent a class of individuals who were charged multiple fees due to Defendants' practices. The class action aims to address common legal questions, such as whether Defendants improperly debited accounts and violated contracts or the covenant of good faith and fair dealing. Morris asserts that class treatment would be appropriate due to the commonality of claims and the impracticality of individual lawsuits (Doc. 80, ¶¶ 35-62.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

The Court will address first Defendants' argument that Morris forfeited her PIN Pad theory of breach by failing to plead it in her original Complaint. The Court will examine second whether the three disclosures provided to customers at checkout constitute enforceable contracts and, if so, whether genuine issues of material fact exist regarding their interpretation and alleged breach. The Court will consider third

5

Defendants' argument that federal law preempts Morris's state law contract claims. The Court finds that genuine issues of material fact preclude summary judgment on all claims.

## I. Plaintiff's PIN Pad Theory Is Properly Before the Court

Defendants argue that Morris improperly shifted her theory of liability at summary judgment. According to Defendants, Morris's complaint, amended complaint, and other pre-summary judgment filings all exclusively identified the Check Policy Disclosure posted at Walmart's checkout as the "operative contract." (Doc. 195 at 17; Doc. 192 at 14.) Defendants argue that Morris cannot now, "on the same day that Walmart moved for summary judgment," unveil a "new legal and factual theory" based on the PIN Pad Disclosure—a document her Complaint "said nothing" about. (Doc. 195 at 17.) Defendants characterize Morris's new filing as an improper attempt to flesh out inadequate pleadings at summary judgment, arguing that a party alleging breach of contract may not assert "a new contract as a new source of liability" without amendment. (*Id.*)

The Court rejects Defendants' argument for multiple reasons. Federal notice pleading standards do not require the level of specificity Defendants demand. Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft*

6

*v. Iqbal* requires that a complaint contain sufficient facts to state a claim that is "plausible on its face." 556 U.S. 662, 678 (2009). The pleading standard does not require plaintiffs to identify every document or piece of evidence that supports their claim. *Id.*

Morris's Complaint satisfies these requirements. Morris alleges that Defendants "breach[ed] contractual promises" arising from her check transaction at Walmart. (Doc. 80 ¶ 4.) Morris's Complaint describes the specific transaction—Morris "wrote a check for $139.71 at a Walmart store in Montana"—quotes the Check Policy Disclosure language, and alleges that Defendants failed to honor their contractual obligations regarding the processing of that check. (Id. ¶¶ 21-27.) These factual allegations clearly state a plausible breach of contract claim arising from the check transaction.

The PIN Pad Disclosure is not a "new contract" requiring a new claim, but rather evidence of the same contractual relationship that Morris originally pleaded. Discovery revealed that the PIN Pad Disclosure represents an integral part of the same transaction Morris described in her Complaint. When asked what would happen if a customer did not sign the authorization on the debit reader, Walmart's corporate representative testified: "I don't know the exact steps but the transaction would not -- you couldn't complete that transaction." (Doc. 194 at 12.) This

testimony establishes that the PIN Pad Disclosure does not represent a separate contract, but instead serves as an essential component of the single check transaction that forms the basis of Morris's claim.

Case law supports this conclusion. In *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, the First Circuit recognized that even at the motion to dismiss stage, where the evidentiary standard is more restrictive, courts may consider documents that are "central to plaintiffs' claim" when "the authenticity of which are not disputed by the parties." 267 F.3d 30, 33 (1st Cir. 2001). When "a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document," that document "merges into the pleadings" and the court can properly consider it. (*Id.*) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). If a court may consider such integral documents when ruling on a motion to dismiss, a court certainly may do so at the summary judgment stage, where a court considers the entire evidentiary record, not merely the pleadings. Here, the PIN Pad Disclosure is undisputedly authentic, central to Morris's check transaction claim, and integral to the very transaction Morris described in her Complaint.

Defendants' position would lead to an absurd result: requiring Plaintiff to amend their complaints every time discovery reveals a document that forms part of the contractual relationship at issue. This approach would be contrary to the liberal

discovery rules that allow parties to develop their cases through the litigation process. As the U.S. Supreme Court recognized in *Conley v. Gibson*, the Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim," because "such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules. 355 U.S. 41, 47–48 (1957).

Defendants cite no authority requiring a plaintiff to identify in the complaint every document that may form part of a contractual relationship. Morris satisfied the plausibility standard by alleging specific facts about her check transaction and the contractual promises she claims were breached. The discovery of additional documents during litigation that memorialize these promises does not transform this into a new claim. For these reasons, the Court finds that Morris's PIN Pad theory properly stands before the Court and does not constitute an improper attempt to amend her Complaint at the summary judgment stage.

## II. The Contract Claims Raise Genuine Disputes

The parties' cross-motions for summary judgment require the Court to interpret three related disclosures: the Check Policy Disclosure posted at the register, the PIN Pad Disclosure that Morris signed, and the Receipt Disclosure provided after

the transaction. The ambiguities within and between these disclosures create genuine issues of material fact that a jury must resolve.

Morris received three different disclosures regarding her check transaction. Each disclosure contained slightly different language. The Court previously found that "both Morris and Walmart have set forth plausible, opposing interpretations of the Check Policy." (Doc. 194 at 4.) The discovery record now reveals that these three disclosures, read together, compound rather than clarify the ambiguities.

**A. Ambiguity Regarding Electronic Return Fee Collection**

The three disclosures use critically different language about collecting return fees. The Check Policy and Receipt Disclosures specify collection "by an EFT(s) or draft(s)." (Doc. 144 at 5.) The PIN Pad Disclosure, the only disclosure that Morris signed, omits any reference to collecting return fees "by EFT." This omission proves significant. As Walmart's expert concedes, the PIN Pad Disclosure contains no "express[] statement . . . saying the posted fee is going to be collected by EFT or draft." (Doc. 194 at 19.) A reasonable consumer could interpret this omission as limiting electronic collection to the check amount only.

Defendants argue that the three disclosures must be read together. Defendants contend that the PIN Pad's reference to "posted fee" incorporates the Check Policy's authorization for EFT collection. (Doc. 195 at 28.) These competing interpretations

10

create a disputed material fact that defeats summary judgment. *See Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 848 (9th Cir. 2004) (quoting *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997); *see also Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

### B. Ambiguity Regarding Multiple Attempts

The ambiguity deepens regarding multiple collection attempts. The Check Policy and Receipt use plural markers: "EFT(s)" and "draft(s)." (Doc. 144 at 5.) The PIN Pad Disclosure states simply "collect the amount plus the posted fee" without any plural indication. (*Id.*) Morris argues the PIN Pad's singular language prohibits multiple attempts. Defendants contend the plural references in the other disclosures clarify that multiple attempts are authorized. Walmart's expert acknowledges this ambiguity, conceding the PIN Pad "does not state that there will be an attempt to collect the fee if it is returned unpaid." (Doc. 194 at 22)

### C. Ambiguity Regarding Separate Versus Combined Debits

The three disclosures also create confusion about whether return fees must be combined with check amounts. The Check Policy and Receipt state "collect your payment and a return fee." (Doc. 144 at 5.) The language conspicuously uses "and" to connect the customer's payment and the return fee. The PIN Pad Disclosure states, "collect the amount plus the posted fee." (*Id.*) This language suggests the arithmetic

11

combination of the two amounts. Morris reads "the amount plus the posted fee" as requiring a single, combined debit of $169.71. Defendants argue this interpretation would violate NACHA Rules requiring separate entries. (Doc. 195 at 25.) Walmart's expert admits the disclosures do "not specifically state that two separate debits will be created." (Doc. 194 at 24.)

### D. The Relationship Between the Three Disclosures Remains Unclear

The relationship between these three disclosures proves ambiguous. The PIN Pad Disclosure could be interpreted either as a complete statement of the contract terms or merely an abbreviated version. The parties dispute whether signing the PIN Pad incorporates the Check Policy by reference through the term "posted fee." Additionally, it appears unclear whether the Receipt Disclosure, provided after the transaction, can modify or supplement the earlier agreements.

Walmart argues that it abbreviated the PIN Pad Disclosure due to "character limitations." (Doc. 195 at 15.) Nowhere does the PIN Pad Disclosure state that it provides an incomplete warning or directs consumers to read additional terms. A reasonable consumer might believe the document that they sign contains all material terms.

When contractual language is "susceptible to two equally reasonable interpretations," the contract is ambiguous, and its meaning becomes a question of

12

fact for the jury. *See Pardi*, 389 F.3d at 848. The multiple ambiguities within and between these three disclosures, including electronic collection authority, multiple collection attempts, separate debits, and the relationship between them, create genuine disputes of material fact. *Id.* A jury must determine what a reasonable consumer would understand when presented with three different disclosures containing three different formulations of the same transaction.

### III.   Federal Preemption Does Not Bar Morris's Claims

Defendants argue that federal law preempts Morris's breach of contract claims, specifically the Electronic Fund Transfer Act (EFTA) and its implementing Regulation E. (Doc. 195 at 30-31.) This argument fails for two reasons: (1) the disclosures at issue differ from the model disclosures in Regulation E; and (2) nothing in the EFTA suggests that it preempts common-law breach of contract claims.

#### A. Walmart's Disclosures Differ from Federal Model Disclosures

Defendants cannot claim federal preemption when their disclosures deviate significantly from Regulation E's model forms. As Morris's brief demonstrates, Walmart customized its disclosures rather than following the federal models. (Doc. 194 at 29-32.) Regulation E provides two separate model disclosures, one for

electronic check conversion (Model A-6), and another for return fee collection (Model A-8):

> Model A-6: "When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction." (Doc. 194 at 29.)

This model contains no language about re-collecting returned checks electronically.

> Model A-8: "If your payment is returned unpaid, you authorize [us/name of person collecting the fee electronically] to make a one-time electronic fund transfer from your account to collect a fee of [$____]." (*Id.* at 29-30.)

This model separately addresses return fees, but "makes no mention of collection of the underlying payment amount by electronic means." (*Id.*)

Walmart collapsed these separate disclosures into one disclosure and added provisions not found in either model:

> "When you provide a check as payment, you authorize us to use information from your check to process a one-time Electronic Funds Transfer (EFT) or draft drawn from your account, or to process the payment as a check transaction...If your check's returned unpaid, you also authorize us to collect your payment and a return fee of $25.00 by an EFT(s) or draft(s) drawn from your account." (Doc. 194 at 30.)

The Court agrees with Morris's observation that this combined disclosure "fundamentally chang[ed] its meaning" by "blurring electronic check conversion with return fee collection, then adding in return check amount collection by

14

electronic means." (*Id.*) Walmart created a materially different disclosure by merging what Regulation E treats as separate transactions and adding authorization for practices not contemplated in either model.

The PIN Pad Contract deviates even further from any model disclosure: "I authorize you to collect my check by EFT/draft, and if returned unpaid, to collect the amount plus the posted fee." (Doc. 194 at 31.) As Morris notes, this language "totally omits any reference to electronic collection of either returned checks or return fees." (*Id.*) These material modifications take Walmart's disclosures outside the safe harbor of federal preemption. Defendants chose to customize their disclosures rather than use Regulation E's model forms. Defendants cannot now claim the protection of federal preemption.

### B. Common-Law Breach of Contract Claims Are Not Preempted

Morris's breach of contract claims would not be preempted even if Defendants had used Regulation E's exact model disclosures. As Morris correctly argues, courts consistently hold that EFTA does not preempt state law contract claims. (Doc. 194 at 32-33.) See *Brown v. Bank of Am., N.A.*, No. 8:21-CV-02334, 2022 WL 2193286, at *3 (D. Md. June 17, 2022) ("[A] common law contract claim that provides greater protection to the consumer is not 'inconsistent' with the EFTA, and so is not

15

preempted."); *Geimer v. Bank of Am., N.A.*, 784 F. Supp. 2d 926, 931 (N.D. Ill. 2011).

Morris points out that the EFTA itself contains an express anti-preemption provision, which Defendants notably omitted from their brief. (Doc. 194 at 33.) This provision states:

> This subchapter does not annul, alter, or affect the laws of any State relating to electronic fund transfers... except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. A State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter.

15 U.S.C. § 1693q. The Ninth Circuit has explained that this section "provides that state laws affording greater protection to consumers than the EFTA are not preempted by the EFTA." *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 565 (9th Cir. 2002).

The Court finds persuasive Morris's argument that she "complains that she was not correctly informed of the check and fee processing used by Walmart, not that Walmart failed to disclose to her its procedures in proper form." (Doc. 194 at 25.) This distinction proves critical. As Morris explains, the EFTA safe harbor provision shields entities only from claims about "failure to make disclosure in proper form," 15 U.S.C. § 1693m(d)(2), not from claims of exceeding contractual

16

authorization. (*Id.*) See *Gunter v. United Fed. Credit Union*, No. 3:15-CV-00483, 2017 WL 4274196, at *3 (D. Nev. Sept. 25, 2017).

Morris correctly observes that her claims "fall squarely within the protection of this anti-preemption provision" because they "would provide greater protection to consumers—not interfere with protections afforded by the EFTA." (Doc. 194 at 33-34.) Defendants opted to deviate from Regulation E's model disclosures. *Compare* 12 C.F.R. § 1005 Appendix A-6 *to* Doc. 147 at 6. Common-law contract claims fall within EFTA's anti-preemption provision. *See Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 565 (9th Cir. 2002); *see also Brown v. Bank of Am., N.A.*, 2022 WL 2193286, at *3 (D. Md. June 17, 2022). EFTA does not preempt Morris's breach of contract claims.

## CONCLUSION

The Court finds that genuine issues of material fact preclude summary judgment. Morris's PIN Pad theory stands properly before the Court as part of the check transaction pleaded in Morris's Complaint. The three disclosures contain multiple ambiguities that create jury questions about what a reasonable consumer would understand. Federal preemption does not apply because Defendants' customized disclosures differ materially from Regulation E's model forms, and

17

EFTA's anti-preemption provision preserves state law contract claims. A jury must resolve the competing interpretations of the contractual language.

## ORDER

Accordingly, **it is ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 194) is **DENIED**.

2. Walmart's Motion for Summary Judgment (Doc. 195) is **DENIED**.

3. TeleCheck's Motion for Summary Judgment (Doc. 192) is **DENIED**.

DATED this 6th day of August 2025.

_____
Brian Morris, Chief District Judge
United States District Court